UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:25cr60 (VDO) |
| | : | |
| v. | : | |
| | : | |
| KRISTIN CAROTENUTO | : | August 5, 2025 |

## GOVERNMENT'S SENTENCING MEMO

### Introduction

Kristin Carotenuto stole medicine destined for patients, took the medications home, filled the vials with saline and tap water, reglued the lids, and returned the tampered vials for distribution to patients. For a nurse, it is hard to imagine a more egregious breach of trust to her patients.

Here, however, for the reasons described below the government believes that Ms. Carotenuto is least culpable health care professional prosecuted in this district in recent years for a tampering offense. As such, a guidelines sentence is not warranted. Under 18 U.S.C. § 3553(a), the government requests that the Court impose a fair and just sentence after considering all the facts of this case.

### Procedural Background

The defendant's crimes were discovered in December 2024. About four months later, on April 7, 2025, the defendant waived her right to indictment and pleaded guilty to a one-count Information.

Sentencing is scheduled for August 12, 2025.

1

**Offense Conduct**

In December 2024, the defendant was employed as a nurse at an outpatient surgical center located in Stamford, Connecticut. As part of her employment, she was granted access to a secure location used by the surgical center to store controlled substances, including hydromorphone and fentanyl.

In December 2024, the defendant accessed the secure storage area at the outpatient surgical center. She was one of only a few employees who had access to that storage facility. She removed multiple vials from different boxes, each containing either a solution of hydromorphone or fentanyl. The defendant took the vials home and removed the controlled substances using a syringe. She kept the controlled substances for her own use and refilled the now empty vials at her house with either saline or water. She used glue to resecure the caps. Later, she returned to the outpatient surgical center and returned the tampered vials to the storage area in a location where they could be distributed for patient use.

On December 16, 2024, an impromptu inventory of the stored oxycodone revealed a discrepancy. The defendant's mother, who was employed as a nurse at the same outpatient surgical facility, was one of the employees who conducted the count. She called her daughter, who was one of the few other employees who also had access to this storage location. The defendant immediately told her mother that she was responsible. At her mother's suggestion, the defendant contacted her supervisor, who was not in the facility that day, and admitted that she tampered with the oxycodone. The supervisor went to the outpatient surgical facility and had a

second discussion with the defendant in which the defendant admitted to also tampering with supplies of hydromorphone.

In this case, the defendant did not use either a crimper, new caps or new septa to reseal the vials. Her efforts at concealment were much more rudimentary and, as such, represent significantly less culpable behavior than the pre-planned efforts of other defendants who used other means to hide their crimes.

On February 19, 2025, just about two months after she committed the crime, the defendant, with her attorney present, met with federal agents and readily admitted her illegal conduct.  Her initial recitation of the facts, when compared against the information gathered during the FDA's investigation, was complete and truthful.  This also augers in the defendant's favor as it quickly allowed the government to assess the potential impact on victims.

Here, it appears that none of the tampered medication were administered to patients.  The outpatient surgical facility utilizes two locations for the storage of controlled substances: one adjacent to the surgical suite where small amounts of medications were stored immediately prior to being used in an operation and a second, larger storage facility in the same building for bulk storage of controlled substances.  The tampered medications were discovered in the latter storage location and not in the smaller unit located near the surgical suite.  No adulterated medications were found in the storage unit adjacent to the surgical suite and it does not appear as if any patients received the tampered medications.

## Analysis of the § 3553(a) Factors

Section 3553(a) directs the district court to consider number of factors in imposing a fair and just sentence. Each criminal case is different and emphasizes different combinations of § 3553(a) factors. In this matter, the government believes the most important § 3553(a) factors are the (1) the specific nature and circumstances of the offense, (2) just punishment, and (3) general deterrence.

### 1. The Nature and Circumstances of the Offense

Here, the manner in which the defendant committed the crime makes her less culpable than other defendants who planned their tampering offense by purchasing devices, such as crimpers, caps and septa, designed to make their crime hard to detect. These facts mitigate in the defendant's favor as compared with other defendants sentenced for the same offense in this district.

### 2. Seriousness of the Offense and Just Punishment

The sentence in this case must reflect the seriousness of the offense committed by the defendant and promote respect for the law. And the punishment must be just. Potentially depriving surgical patients of pain medications is unquestionably a serious offense. Many health care providers have access to controlled substances. A small number steal "waste," that is the medication leftover after administering a prescribed dose to a patient rather than following an approved procedure for disposal. Even fewer steal full vials of medication for their own use, but do not return the vials. An even smaller number take full vials,

extract the drug, replace it with either saline or water, and return the vial to a storage location where it can be distributed to patients.  These are the defendants that are guilty of a tampering offense, a group that includes Ms. Carotenuto.

### 3.  General Deterrence

Trust between a patient and their healthcare provider is essential to the practice of medicine. The act of a patient accepting and taking a medication from a healthcare professional is – at its essence – an act of faith.  Patients must trust that the medicines they are given are indeed authentic and efficacious. It is not uncommon for a variety of different medical professionals to have access to controlled substances.  One safeguard against this crime is to generally deter other providers who may also face difficult personal circumstances from making the same choice as the defendant. Other licensed providers facing similar personal challenges should know that if they use their specialized access to alter the composition of needed mediations available for distribution to patients, they will face significant legal consequences in the criminal justice system. Such a message would serve both to deter other medical professionals as well as protect their patients.

### <u>Restitution</u>

Section 3663A(b)(4) allows the Court to award restitution for expenses by victims incurred during the prosecution of the case.  *See e.g. United States v. Avenatti*, 81 F. 4th, 171, 208 (2d. Cir. 2023); *United States v. Afriyie*, 27 F. 4th 161, 173 (2d. Cir. 2022).   In this matter, counsel for the victim informed the government that the victim organization is not seeking restitution.   Further,

because the tampered medications were from a general storage location and not the smaller unit located near the surgical suite, it does not appear as if any patients received the tampered medications.

## Conclusion

After considering the Sentencing Guidelines and the other factors under 18 U.S.C. § 3553(a), the Court should impose a fair and just sentence.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

/s

RAY MILLER
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT 20451
157 CHURCH STREET, 23RD FLOOR
NEW HAVEN, CT 06510
(203) 821-3700

CERTIFICATE OF SERVICE

This is to certify that on August 5, 2025 a copy of the foregoing Memorandum was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/

Ray Miller
Assistant U.S. Attorney